**UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | Chapter 7 |
| **KEVIN G CARNEY** | ) | |
| | ) | Bankruptcy No. 09-18053-PSH |
| | ) | |
| **Debtor.** | ) | |
| | ) | Honorable Pamela S. Hollis |

**COVER SHEET FOR APPLICATION FOR PROFESSIONAL COMPENSATION**

| | |
|---|---|
| **Name of Applicant:** | Lakelaw |
| **Authorized to Provide Professional Services to:** | David P. Leibowitz, Trustee for the Estate of KEVIN G CARNEY |
| **Date of Order Authorizing Employment:** | September 17, 2009 |
| **Period for which Compensation is Sought:** | November 20, 2012 – July 24, 2017 |
| **Amount of Fees Sought:** | $ 21,445.00 |
| **Amount of Expense Reimbursement Sought:** | $ 309.65 |
| **This is an:** | Interim Application ☐   Final Application ☒ |

The aggregate amount of fees and expenses paid to the Applicant to date for services rendered and expenses incurred herein is:    $54,795 in fees and $1,165.80 in expenses

Date:  October 25, 2017            By:    /s/ David P. Leibowitz
                                                    Applicant

**UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| **KEVIN G CARNEY** | ) | |
| | ) | Bankruptcy No. 09-18053-PSH |
| | ) | |
| | ) | |
| **Debtor.** | ) | Honorable  Pamela S. Hollis |

## SECOND AND FINAL APPLICATION OF THE LAW OFFICES OF DAVID P. LEIBOWITZ, LLC, d/b/a LAKELAW, AS COUNSEL TO CHAPTER 7 TRUSTEE, FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

The Law Offices of David P. Leibowitz, LLC, d/b/a Lakelaw ("Lakelaw"), attorneys for David P. Leibowitz, the Chapter 7 Trustee for the estate of KEVIN G. CARNEY ("Debtor"), hereby respectfully submits its second and final application for an order allowing compensation in the amount of $21,445 for 49.70 hours of professional services rendered as counsel to the Chapter 7 Trustee for the period beginning November 20, 2012 through and including July 24, 2017 ("Application Period"), and reimbursement of $309.65 for actual costs incurred incident to those services, and making the **previous interim award of** $54,795 in fees and $1,165.80 in expenses for the prior application period a **final award**.  Lakelaw's services were beneficial to the bankruptcy estate and are compensable pursuant to § 330(a) of the Bankruptcy Code and in accordance with Bankruptcy Rules 2002(a)(6) and 2016(a) and Local Bankruptcy Rule 5082-1.  In support of this Application, the Trustee states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant, *inter alia*, to 28 U.S.C. § 157(b)(2)(A) and (O).

## FACTUAL AND PROCEDURAL BACKGROUND

2.      On May 19, 2009 ("Petition Date"), an involuntary petition under chapter 7 of the Bankruptcy Code was filed against Debtor. An order for relief under chapter 7 was entered on July 21, 2009. The Trustee was appointed that day, and he continues to serve as the duly appointed Trustee herein.

3.      After his appointment, the Trustee applied to this Court for an order approving the retention of Lakelaw as his counsel. On September 17, 2009, this Court approved the retention of Lakelaw to assist the Trustee in the administration of the estate's assets.

## NATURE OF SERVICES PROVIDED BY LAKELAW

4.      Lakelaw assisted the Trustee in the administration of the estate in extended negotiations with the Department of Justice regarding a settlement of the priority claim filed by the IRS. The IRS had filed a claim for back taxes owed by the Debtor for years 2005 through 2008 in the amount of $651,274.64, asserting priority as to the entire claim. In its negotiations, Lakelaw took the position that allowance of the priority claim might allow the IRS to receive a double recovery, inasmuch as many of the Ponzi scheme victims had resolved significant claims brought against them by the IRS related to phantom profits. Moreover, the priority status of the claim threatened to prevent all but a minuscule distribution, if any, to general unsecured creditors in this case. Lakelaw ultimately succeeded in obtaining an agreed subordination to the investors' claims for actual net losses. In the stipulation, approved by the Court pursuant to settlement motion, the bulk of the claim, i.e., for taxes relating to tax years 2006 through 2008, was subordinated, leaving only the 2005 taxes, in the amount of $8,289.25, entitled to priority status. As a result of the subordination, there will be an 11.4% distribution on general unsecured claims in this case.

There were 163 such general unsecured claims filed,[1] and Lakelaw undertook the comprehensive and complex review of those claims, expending great effort to ensure that each investor's claim was allowed in the proper classification and amount, or disallowed, as necessary. In connection therewith, Lakelaw reviewed the State of Illinois' analysis of the investments and payouts, the financial spreadsheets prepared by the Pakter firm, and additional information provided by the Trustee's special counsel with respect to settlements reached with defendants and potential defendants regarding avoidance claims. Most, but not all, of such settlements involved waivers of claim against the bankruptcy estate, and Lakelaw reviewed each one to determine whether the claim filed by the defendant had been waived. In addition, in Lakelaw's review of the financial spreadsheets, the State's analysis, and the account statements attached to the proofs of claim, it became apparent that some of the State's listings combined certain investors who actually had separate accounts, giving rise to separate allowable proofs of claim. Lakelaw also took steps to identify those claims filed by defendants who had not repaid avoidance recoveries and whose claims therefore had to be disallowed under § 502(d) of the Bankruptcy Code. After performing the necessary analysis as to each claim, Lakelaw prepared and filed the necessary objections and appeared at the hearings and continued hearings thereon.

5.    The time records attached to this fee application set forth in adequate detail the nature and extent of the services rendered by Lakelaw assisting the Trustee in carrying out his duties.

6.    Lakelaw has made every effort to ensure that the services it performed for the Trustee were handled by qualified persons at the lowest hourly rates possible, consistent with the skill-set required for a particular task.

---

[1] Lakelaw successfully objected to the investors' claims that asserted secured or priority status.

7. In compliance with Local Bankruptcy Rule 5082-1, Lakelaw has classified its services into five (5) separate categories: (a) asset disposition; (b) case administration; (c) claims administration and objections; (d) fee/employment applications; and (e) tax issues.

8. The following is a general description of the tasks performed in each of Lakelaw's principal categories of activity:

- **Asset Disposition**: (Fees: **$315.00/** Hours: **0.70**) Services consist of the drafting and filing of a motion to sell the unpaid default and summary judgments obtained by the Trustee in avoidance actions, including appearance at the hearing thereon.
- **Case Administration**: (Fees: **$820.00/** Hours: **1.40**) Services rendered in connection with the review of real estate records to distinguish Debtor from others with the same name in order to identify real estate owned, as well as services rendered in phone conferences with certain creditors.
- **Claims Administration and Objections**: (Fees: **$15,360.00/** Hours: **34.90**) Services rendered in connection with the review of the 163 claims filed against this estate by investors in Debtor's Ponzi scheme, to ensure that each investor's claim was allowed in the proper classification and amount, or disallowed, as necessary. In connection therewith, Lakelaw reviewed the State of Illinois' analysis of the investments and payouts, the financial spreadsheets prepared by the Pakter firm, and additional information provided by the Trustee's special counsel with respect to settlements reached with defendants and potential defendants regarding avoidance claims. Most, but not all, of such settlements involved waivers of claim against the bankruptcy estate, and Lakelaw reviewed each one to determine whether the claim filed by the defendant had been waived. As part of its analysis, Lakelaw determined that some of the State's listings combined certain investors who actually had separate accounts, giving rise to separate allowable proofs of claim. Lakelaw also took steps to identify those claims filed by defendants who had not repaid avoidance recoveries and whose claims therefore had to be disallowed under § 502(d). After performing the necessary analysis as to each claim, Lakelaw prepared and filed the necessary objections and appeared at the hearings and continued hearings thereon.
- **Fee/Employment Applications**: (Fees: **$1,947.50/** Hours: **5.90**) Services rendered in the drafting and filing of a motion to employ the Trustee's accountant, as well as services in preparing this final fee application and a portion of the services rendered in preparation of Lakelaw's first interim fee application, including attendance at the hearing thereon.
- **Tax Issues**: (Fees: **$3,002.50/** Hours: **6.80**) Services rendered in extended negotiations with the Department of Justice regarding a settlement agreement providing for the subordination of the bulk of the priority claim filed by the IRS, as well as the drafting and filing of the motion to approve the settlement agreement and attendance at the hearing thereon.

**REQUESTED RELIEF**

9.  The Trustee requests that an order be entered allowing Lakelaw fees for work performed during the Application Period in the amount of $21,445, together with expenses of $309.65, and making the **previous interim award of** $54,795 in fees and $1,165.80 in expenses **for the prior application period a final award**. Attached hereto as Exhibit A is a detailed itemization of the legal services performed during the current Application Period.

10. The Trustee requests entry of an order authorizing and directing payment of the unpaid balance of fees and expenses of Lakelaw in the total amount of $21,754.65 for legal services.

**SUMMARY OF SERVICES RENDERED BY LAKELAW**

11. In summary, the total compensation sought for each professional with respect to the aforementioned categories is as follows:

| Professional Name | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| David Leibowitz | Attorney | 650.00 | 3.90 | $2,535.00 |
| Linda Green | Attorney | 450.00 | 22.80 | $10,260.00 |
| Jonathan Brand | Attorney | 425.00 | 9.30 | $3,952.50 |
| Justin Storer | Attorney | 375.00 | 11.00 | $4,125.00 |
| Carrie Zuniga | Attorney | 375.00 | 0.50 | $187.50 |
| Rachel Leibowitz | Paralegal | 175.00 | 2.20 | $385.00 |
| **Grand Total** | | | 49.70 | $21,445.00 |

12. The hourly rates charged by Lakelaw in the course of its representation of the Trustee compare favorably with the rates charged by other Chicago metropolitan firms having attorneys and paralegals with similar experience and expertise. Further, the amount of time spent by Lakelaw with respect to representing the Trustee is reasonable given the difficulty of the issues presented, the time constraints imposed by the circumstances, the amounts at stake, and the ultimate benefit to the estate.

13. Lakelaw has always conscientiously attempted to avoid having multiple attorneys appear or convene on behalf of the Trustee. In certain circumstances, however, it may have been necessary for more than one of Lakelaw's attorneys to appear in Court at the same time. When possible, Lakelaw attempts to have one attorney handle multiple matters on the Court's calendar. Similarly, on certain occasions, Lakelaw may have had more than one attorney attend a meeting to strategize on issues that had particular import in this case. To the greatest extent possible, meetings, court appearances, negotiations, and other matters were handled on an individual basis.

14. Given the Johnson criteria codified in 11 U.S.C. § 330(a)(3), namely: (i) the nature, extent and value of the services; (ii) the time spent; (iii) the rates charged for such services; (iv) the performance of the services within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (v) the reasonableness of the services based on the compensation charged by comparably skilled practitioners in other bankruptcy and non-bankruptcy matters, Lakelaw respectfully submits that the requested final compensation represents a fair and reasonable amount that should be allowed in full.

## EXPENSES INCURRED BY LAKELAW

15. The actual and necessary costs expended by Lakelaw during the Application Period are summarized below and set forth in detail in Exhibit B attached hereto. The requested reimbursement amount for expenses incurred during the Application Period is $309.65. All of the expenses for which reimbursement is sought are expenses that Lakelaw customarily recoups from all of its clients.

16. All expenses incurred by Lakelaw were ordinary and necessary expenses. All expenses billed to the Trustee were billed in the same manner as Lakelaw bills non-bankruptcy clients. Further, the expenses for which reimbursement is sought constitute the types and amounts previously allowed by bankruptcy judges in this and other districts.

17. The specific expenses incurred during the Application Period for which reimbursement is requested are as follows:

| Expense Category | Amount |
|---|---:|
| Copies | $213.60 |
| Postage | $96.05 |
| **Total** | $309.65 |

## COMPLIANCE WITH 11 U.S.C. § 504

18. Other than as provided for and allowed by 11 U.S.C. § 504, there is no agreement between Lakelaw and any other firm, person or entity for the sharing or division of any compensation paid or payable to Lakelaw.

## NOTICE

19. At least twenty-one days' notice of this application has been provided to the Debtor, her counsel, the Office of the United States Trustee, all creditors who have filed claims in this case, and to parties who have previously requested notice of pleadings and proceedings herein. Applicant suggests that no further notice is necessary and requests that the Court find that no other or further notice is required.

**WHEREFORE**, the Trustee respectfully requests entry of an order:

A) Allowing Lakelaw compensation in the amount of $21,445.00 for professional services rendered on behalf of the Trustee during the Application Period;

B) Allowing Lakelaw reimbursement of expenses incurred during the Application Period in the amount of $309.65;

C) Making the **previous interim award of** $54,795 in fees and $1,165.80 in expenses for the prior application period a **final award**, resulting in total final compensation during this case of $76,240 in fees and $1,475.45 in expenses;

D) Authorizing the Trustee to pay all allowed unpaid compensation and expense reimbursement to Lakelaw;

E) Finding that due and adequate notice has been given, and

F) Granting such other and further relief as may be equitable in the circumstances.

    Respectfully submitted,

**David P. Leibowitz, Chapter 7 Trustee for the Estate of KEVIN G CARNEY**

By:   /s/ David P. Leibowitz
David P. Leibowitz (ARDC # 1612271)
Lakelaw
53 West Jackson Boulevard, Suite 1610
Chicago, Illinois 60604
847.249.9100

David P. Leibowitz (ARDC # 1612271)
Lakelaw
53 West Jackson Boulevard, Suite 1610
Chicago, Illinois 60604
847.249.9100